1  Jeffrey B. Maltzman, CA Bar No. 131758
   Edgar R. Nield, CA Bar No. 135018
2  Gabrielle De Santis Nield, CA Bar No. 110930
   Rafaela P. Castells, CA Bar No. 290828
3  MALTZMAN & PARTNERS, P.A.
   681 Encinitas Boulevard, Suite 315
4  Encinitas, CA 92024
   Telephone: (760) 942-9880
5  Facsimile:  (760) 942-9882
   jeffreym@maltzmanpartners.com
6  edn@maltzmanpartners.com
   gabn@maltzmanpartners.com
7  rafaelac@maltzmanpartners.com

8
9  Attorneys for Defendant, PRINCESS CRUISE LINES, LTD.

10        **UNITED STATES DISTRICT COURT**

11        **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 12  KRIS PARKER, TOM ROCHAT, JAMES BOLDEN, PAULETTE SCHMIDT, DEBORAH PRYOR-BRUNS, DENNIS BRUNS, DIANE CASASSA-ZIMMERMAN, CHRIS GRADY, BELINDA DILL, JACK DILL, GUADALUPE MENDEZ, MACIELO SALAZAR, ISABELLE NG, TOM NG, SHEILA PRYOR, JOE PRYOR, ROBIE ROWE, WILEY ROWE, LARRY SCHWINDT, CONNIE SCHWINDT, MICHELLE SMITH, STEVEN SMITH, DONALD STAIR, EILEEN STAIR, STELLA TORREZ, CINDY VAN HORN, DAVID VAN HORN, DEBRA DALTON, MICHAEL DALTON, AURORA KIRBY, and MARIO BATZ, | CASE NO.: 2:20-CV-03788-RGK-SK **DEFENDANT PRINCESS CRUISE LINE LTD.'S MOTION TO DISMISS** Date:  August 17, 2020 Time: 9:00 a.m. Judge: Hon. R. Gary Klausner Courtroom: 850 Magistrate: Hon. Steve Kim Filed:  04/24/2020 |

                Plaintiffs,

23  vs.

24  PRINCESS CRUISE LINES, LTD.,

                Defendant.

*(left margin, vertical text)* MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

## **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................... 1

II.     LEGAL STANDARD ............................................................................... 4

III.    MEMORANDUM OF LAW ...................................................................... 4

        A.    Federal Maritime Law Applies to Plaintiffs' Claims............................ 5

        B.    Plaintiffs Cannot Recover for Emotional Distress Because They
              Fail to Allege Facts Demonstrating They Were Within the Zone
              of Danger for Contracting COVID-19 ................................................... 5

              1.    To Recover for Emotional Distress Based on Exposure to
                    a Disease, Plaintiffs Must Plausibly Allege That They
                    Contracted and Have Suffered Symptoms of That Disease ......... 6

              2.    Plaintiffs' Allegations Do Not Satisfy the Zone of Danger
                    Test.......................................................................................... 9

              3.    Finding Plaintiffs' Claims Sufficient Would Invite the
                    Exact Policy Consequences the Supreme Court Warned
                    Against ................................................................................... 13

        C.    Plaintiffs' Claims Also Fail Because They Do Not Allege That
              Their Distress Has Caused a Non-Trivial Physical Injury................... 14

        D.    Plaintiffs' Nuisance Claim Fails ......................................................... 16

        E.    Plaintiffs' Claims for Punitive Damages are Foreclosed as a
              Matter of Law and Should be Dismissed or Stricken .......................... 17

IV.     CONCLUSION ...................................................................................... 20

MALTZMAN & PARTNERS

681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

# TABLE OF AUTHORITIES

## Cases

*Adamson v. Port of Bellingham*, 907 F.3d 1122 (9th Cir. 2018)..................................5

*Ainsworth v. Penrod Drilling Co.*, 972 F.2d 546 (5th Cir. 1992) ............................15

*Alisu Investments, Ltd. v. TriMas Corp.*, 2019 WL 856396 (C.D. Cal. Jan. 16, 2019) ....................................................................................................................16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..................................................................4, 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).........................................................4

*Bonner v. Union Pac.*, 123 F. App'x 777 (9th Cir. 2005) ...........................................9

*Chaparro v. Carnival Corp.*, 693 F.3d 1333 (11th Cir. 2012)....................................8

*Churchill v. F/V Fjord*, 892 F.2d 763 (9th Cir. 1998)...............................................18

*Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532 (1994) .......2, 7, 8, 11, 12, 13, 17

*Crawford v. Nat'l R.R. Passenger Corp.*, 2015 WL 8023680 (D. Conn. Dec. 4, 2015) ....................................................................................................................10

*CSX Transp., Inc. v. Hensley*, 556 U.S. 838 (2009) ...................................................9

*Duet v. Crosby Tugs, LLC*, 2008 WL 5273688 (E.D. La. Dec. 16, 2008) ...............14

*Dunn v. Hatch*, 792 F. App'x 449 (9th Cir. 2019) ...................................................18

*Ellenwood v. Exxon Shipping*, 795 F. Supp. 31 (D. Me. 1992)................................15

*Eslinger v. Celebrity Cruises, Inc.,* 772 Fed.Appx. 872 (11th Cir. 2019).................19

*Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008) .................................................20

*Exxon Valdez v. Exxon Mobil*, 568 F.3d 1077 (9th Cir. 2009)................................20

*Fulk v. Norfolk S. Ry. Co.*, 35 F. Supp. 3d 749 (M.D.N.C. 2014)......................10, 12

*Goodrich v. Long Island Rail Rd. Co.*, 654 F.3d 190 (2d Cir. 2011).................10, 17

*Hutton v. Norwegian Cruise Line Ltd.*, 144 F.Supp.2d 1325 (S.D. Fla. 2001).........11

*In re Amtrak Sunset Ltd. Train Crash in Bayou Canot, Ala. on Sept. 22, 1993*, 121 F.3d 1421 (11th Cir. 1997)...............................................................................18

*In re Clearsky Shipping Corp.*, 2002 WL 31496659 (E.D. La. Nov. 7, 2002) .........11

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995)..5

*Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474 (5th Cir. 2001) ..........................14

DEFENDANT'S MOTION TO DISMISS                                    2:20-CV-03788-RGK-SK

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

*Metro-North Commuter R. Co. v. Buckley*, 521 U.S. 424 (1997) 2, 4, 6, 7, 8, 9, 10, 11, 17

*Miles v. Apex Marine Corp.*, 498 U.S. 19 (1986)...............................................18, 19

*Naeyaert v. Kimberly-Clark Corp.,* 2018 WL 6380749 (C.D. Cal. Sept. 28, 2018). 11

*Negron v. Celebrity Cruises, Inc.*, 360 F. Supp. 3d 1358 (S.D. Fla. 2018).............2, 8

*Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135 (2003)....................2, 6, 8, 9, 12, 13, 20

*Sawyer Bros., Inc. v. Island Transporter, LLC*, 887 F.3d 23 (1st Cir. 2018)...........11

*Shell Offshore Inc. v. Greenpeace, Inc.*, 2012 WL 1931537 (D. Alaska May 29, 2012)...............................................................................................................16

*Simmons v Royal Caribbean Cruises, Ltd.,* 423 F. Supp.3d. 1350 (S.D. Fla 2019) .19

*Smith v. A.C. & S., Inc.*, 843 F.2d 854 (5th Cir.1988)..................................................9

*Smith v. Carnival Corp.*, 584 F. Supp. 2d 1343 (S.D. Fla. 2008) .............................9

*Smith v. Union Pac. R.R. Co.*, 236 F.3d 1168 (10th Cir.2000) ...........................12, 17

*Stacy v. Rederiet Otto Danielsen, A.S.*, 609 F.3d 1033 (9th Cir. 2010) .....................8

*Taghadomi v. United States*, 401 F.3d 1080 (9th Cir. 2005) .....................................5

*Tassinari v. Key W. Water Tours, L.C.*, 480 F. Supp. 2d 1318 (S.D. Fla. 2007) 14, 15

*The Dutra Grp. v. Batterton*, 139 S. Ct. 2275 (2019).......................14, 17, 18, 19, 20

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363 (9th Cir. 1992).................................................................................................................5

*Williams v. Carnival Cruise Lines, Inc.*, 907 F. Supp. 403 (S.D. Fla. 1995)......15, 16

*Williams v. United States*, 711 F.2d 893 (9th Cir.1983) .............................................5

*Wyler v. Holland Am. Line-USA, Inc.*, 2002 WL 32098495 (W.D. Wash. Nov. 8, 2002).................................................................................................................14

## Statutes

46 U.S.C. §30303.....................................................................................................19

## Rules

Fed. Rule Civ Pro 12(b)(6) ...............................................................................4, 5, 17

Fed. Rule Civ Pro 12(f) ............................................................................................17

L.R. 7-3 ........................................................................................................................1

Defendant, PRINCESS CRUISE LINES, LTD. (hereafter "Defendant" or "PRINCESS"), hereby files this Motion to Dismiss the First Amended Complaint (De 34) filed by Plaintiffs herein.

This motion is made following several conferences of counsel pursuant to L.R. 7-3 which took place on June 23, 2020, June 25, 2020 and June 26, 2020.

## I.    INTRODUCTION

Plaintiffs ask this Court to recognize an unprecedented theory of liability for emotional distress, unmoored from any physical harm, that is squarely foreclosed by Supreme Court precedent. If accepted, Plaintiffs' theory would open the door to open-ended liability for every business, school, church, and municipality across America, stalling economic recovery in the wake of the COVID-19 pandemic and complicating the ability of businesses to reopen. Consistent with Supreme Court and Ninth Circuit precedent, this Court should reject Plaintiffs' attempt to expand emotional distress liability and dismiss the First Amended Complaint.

Plaintiffs are among over 150 individuals who have filed nearly identical lawsuits against Defendant, each seeking one million dollars in compensatory damages for emotional distress based on their fear that they might have contracted COVID-19 during their cruise. Like dozens of virtually identical cases, these Plaintiffs embarked the *Grand Princess* cruise ship on February 21, 2020. (Am. Compl. ¶ 37.) Importantly, Plaintiffs do not claim they contracted COVID-19 or that they suffered any symptoms of COVID-19. Rather, Plaintiffs seek damages for emotional distress based solely on the fact that they were aboard the same 107,517 ton cruise ship along with approximately 3,700 other passengers and crew, some of whom could have interacted with individuals from the preceding cruise who were later diagnosed with COVID-19 after their cruise ended. (Am. Compl. ¶¶ 40-42.) Plaintiffs claim, without explanation, that merely by virtue of being on the same cruise ship with some individuals that were on the prior cruise, they were at "actual risk of immediate physical injury." (Am. Compl. ¶ 43.) While evidence will

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

1

ultimately show that Plaintiffs' factual allegations against PRINCESS are inaccurate and misleading, even accepting Plaintiffs' allegations as true for the purposes of considering this Motion to Dismiss, the First Amended Complaint makes clear that Plaintiffs' claims fail as a matter of law.

The Supreme Court has squarely held that a plaintiff cannot recover for emotional distress stemming from potential exposure to a disease "unless, and until, he manifests symptoms of a disease." *Metro-North Commuter R. Co. v. Buckley*, 521 U.S. 424, 427 (1997). This rule applies to claims of emotional distress brought under federal maritime law. *Negron v. Celebrity Cruises, Inc.*, 360 F. Supp. 3d 1358 (S.D. Fla. 2018). Supreme Court precedent thus requires dismissal here, because Plaintiffs do not (and cannot) plausibly claim that they either contracted COVID-19 or had sufficient symptoms of disease to establish they had contracted the virus as a result of Defendant's conduct.

The Supreme Court has consistently reaffirmed this rule precisely to avoid the oppressive societal costs that would occur if claims like Plaintiffs' could go forward. As the Court has explained, "contacts, even extensive contacts," with potential carriers of diseases "are common." *Metro-North*, 521 U.S. at 434. And unlike with physical injury, "there are no necessary finite limits on the number of persons who might suffer emotional injury" as a result of fear of contracting an illness. *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 546 (1994). If anyone potentially exposed to a contagion could obtain damages for emotional distress, "[t]he large number of those exposed and the uncertainties that may surround recovery" would prompt a "flood" of lawsuits, *Metro-North*, 521 U.S. at 434, and would lead to "the very real possibility of nearly infinite and unpredictable liability for defendants." *Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135, 146 (2003).

With the COVID-19 pandemic, a "flood" has already begun. In just its first few months, over 30 cases have already been filed just from this one cruise ship, with similar cases filed relating to passengers on other cruises and other vessels.

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

And there is no reason to think the flood will abate. As of the date of filing this brief, over 3 million cases of COVID-19 have been confirmed in the United States alone and nearly 12 million cases worldwide.[1] Thousands of schools, nursing homes, shopping centers, summer camps, stadiums, parks, and businesses across America have inevitably had cases on their premises. If Plaintiffs' theory of liability succeeds, then all of the millions of individuals who passed through those venues can similarly claim to have suffered emotional distress if they learn that another person who was later diagnosed with COVID-19 was present. Straightforward application of the Supreme Court's rules governing these fear of disease claims will prevent the cataclysmic result of allowing open-ended liability for all of these venues.

There is a second, independent barrier to Plaintiffs' claims: In addition to requiring that a plaintiff contract the disease or at least show sufficient symptoms to suggest the plaintiff has contracted the disease, courts further require that the plaintiff's fear must give rise to serious physical consequences before emotional distress damages can be recovered. Mere anxiety or fear about their health, as is alleged by Plaintiffs, is legally insufficient to support a claim for emotional distress in a fear of illness case. Just as Plaintiffs here do not claim a confirmed diagnosis of COVID-19, nor symptoms suggesting they actually contracted the virus, they did not suffer (nor do they allege to have suffered) the requisite serious physical consequences stemming from their alleged emotional distress. Additionally, Plaintiffs' nuisance claim fails and their request for punitive damages is flatly insufficient under the strict standards governing punitive damages in maritime claims.

Plaintiffs' claims threaten the ability of businesses to reopen and for the economy to resume. If individuals in Plaintiffs' situation can recover, businesses,

---

[1] *See* Coronavirus Disease 2019 (COVID-19), Cases in the U.S., Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html.

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

school, churches and other venues across America will be forced to keep their doors closed long after state stay-at-home orders are lifted, lest they risk crushing liability to each and every one of their invitees for emotional distress, based on the mere possibility of infection, because some employee or other current or past customer of the business was later discovered to have the virus. The likelihood of endless liability for every business, church, school and other venue in America under Plaintiffs' expansive theory is even more likely in the context of COVID-19, which is now known to be transmitted by asymptomatic individuals which no defendant could realistically detect with current testing limitations. The Supreme Court's limits on emotional distress for fear of disease claims are intended to avoid exactly that result, and a straightforward application of those limits here mandates dismissal.

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, … on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.*

## III.   MEMORANDUM OF LAW

Recognizing the potential for widespread liability in fear-of-disease cases, courts apply two strict limits on such cases. First, the Supreme Court has held that a plaintiff cannot recover for emotional distress stemming from alleged exposure to an illness "unless, and until, he has symptoms of a disease." *Metro-North*, 521 U.S. at 426-27. Second, courts independently require that a plaintiff plausibly allege serious physical manifestations of their purported emotional distress. Plaintiffs have not

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

4

plausibly alleged either symptoms or a physical manifestation of their distress, and thus their case must be dismissed under Rule 12(b)(6). Even if Plaintiffs' claims survive, their First Amended Complaint should be dismissed based on its failure to allege any facts showing Plaintiffs ever came into actual contract with the virus, Plaintiffs fail to state a nuisance claim and their request for punitive damages should be dismissed or stricken.

### A. Federal Maritime Law Applies to Plaintiffs' Claims

As Plaintiffs acknowledge by invoking this Court's maritime jurisdiction and stating that the case "involves a maritime tort" (Am. Compl. ¶ 34), Federal maritime law applies to Plaintiffs' claims.[2] Maritime law applies when "(1) the alleged wrong occurred on or over navigable waters, and (2) the wrong bears a significant relationship to traditional maritime activity." *Williams v. United States*, 711 F.2d 893, 896 (9th Cir.1983). "'[V]irtually every activity involving a vessel on navigable waters" is a "traditional maritime activity sufficient to invoke maritime jurisdiction.'" *See Taghadomi v. United States*, 401 F.3d 1080, 1087 (9th Cir. 2005) ((quoting *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 542 (1995))). And when a case falls within a court's maritime jurisdiction, "[s]ubstantive maritime law"—not state law—"controls the claim, 'whatever the forum or asserted basis of jurisdiction.'" *Adamson v. Port of Bellingham*, 907 F.3d 1122, 1125-26 (9th Cir. 2018) (quoting *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 366 n.1 (9th Cir. 1992)).

### B. Plaintiffs Cannot Recover for Emotional Distress Because They Fail to Allege Facts Demonstrating They Were Within the Zone of Danger for Contracting COVID-19

Under well-established principles that govern emotional distress claims brought under federal maritime jurisdiction, Plaintiffs' claims should be dismissed.

---

[2]  Plaintiffs' Passage Contract applicable to their voyage similarly invokes maritime law. See, https://www.princess.com/legal/passage_contract/plc.html at Section 1.

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

### 1. To Recover for Emotional Distress Based on Exposure to a Disease, Plaintiffs Must Plausibly Allege That They Contracted and Have Suffered Symptoms of That Disease

The Supreme Court has "sharply circumscribed" recovery under federal law for "stand-alone emotional distress claims"—*i.e.*, claims of emotional harm that are not "brought on by a physical injury or disease"—by requiring that the plaintiff be within the "zone of danger" of defendant's allegedly negligent conduct. *Ayers,* 538 U.S. at 147 (2003). The Supreme Court's zone of danger test "confines recovery for stand-alone emotional distress claims to plaintiffs who: (1) 'sustain a *physical impact* as a result of a defendant's negligent conduct'; or (2) 'are placed in *immediate risk of physical harm* by that conduct'—that is, those who escaped instant physical harm, but were 'within the zone of danger of physical impact.'" *Id.* at 146 (emphasis added).

In *Metro-North*, the Supreme Court set forth a more specific, categorical version of the zone of danger test that governs claims of emotional distress based on alleged negligent exposure to a disease. Under *Metro-North*, a plaintiff alleging emotional distress from such exposure "cannot recover unless, and until, he manifests symptoms of a disease." 521 U.S. at 426-27. In other words, there is no liability for emotional distress from fear of contracting a disease unless the plaintiff either has been diagnosed with the disease or at least has sufficient symptoms to suggest they have the illness.

The Supreme Court has since reaffirmed *Metro-North*'s categorical rule, explaining in *Ayers* that "emotional distress damages may not be recovered" by "disease-free" plaintiffs. 538 U.S. at 141. The Court specifically "decline[d] to blur, blend, or reconfigure" the "clear line" between "disease-free" plaintiffs, who cannot recover, and those "who suffer from a disease," who can recover under certain conditions. *Id.*; *see also id.* at 146 (explaining that because the plaintiff in *Metro-North* "had a clean bill of health," the Court "rejected his entire claim for relief").

The Court has also made clear that its rule applies not just to claims based on exposure to toxins like asbestos, but to any claim based on alleged exposure to a potential source of disease—specifically including "germ-laden air." *Metro-North*, 521 U.S. at 437.

By contrast, mere *exposure* to a contagion—even a significant and substantial exposure—is insufficient to establish someone is within the required "zone of danger," under either the "physical impact" prong or the "immediate risk of physical harm" prong. In *Metro-North*, the plaintiff's employer had negligently exposed him to a "massive" and "tangible" amount of asbestos, placing him in direct, close contact with asbestos for about an hour a day over a three-year period as he removed asbestos from pipes, often "covering himself with insulation dust that contained asbestos." *Id.* at 427. The plaintiff feared that this intense prolonged exposure to asbestos increased his chances of dying from cancer and the plaintiff introduced expert testimony supporting that his risk of cancer had in fact increased. *Id.* The Supreme Court nonetheless held that the plaintiff could not recover for emotional distress since he did not ultimately contract cancer, holding that his exposure to the disease-causing substance alone was insufficient to establish emotional distress liability for fear of contracting a disease. *Id.* at 430 (quoting *Gottshall*, 512 U.S. at 547-48). The Court explained that if "a simple (though extensive) contact with a carcinogenic substance" were sufficient to permit recovery, it would not "offer much help in separating valid from invalid emotional distress claims." *Id.* at 434. "Judges would be forced to make highly subjective determinations concerning the authenticity of claims for emotional injury, which are far less susceptible to objective medical proof than are their physical counterparts." *Gottshall*, 512 U.S. at 552.

In imposing these strict limits on emotional distress claims, the Supreme Court contrasted claims where a plaintiff alleges emotional harm "*brought on by* a physical injury[] or disease," which are not subject to the same zone of danger

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

7

restriction. *Ayers*, 538 U.S. at 147-48. For example, a plaintiff who has contracted asbestosis after asbestos exposure can "seek compensation for fear of cancer as an element of his asbestosis-related pain and suffering damages." *Id.* at 158. But the same plaintiff who was exposed to asbestos and who did not contract asbestosis cannot.

The Supreme Court adopted the strict zone of danger test specifically to avoid the "uncabined recognition of claims for negligently inflicted emotional distress," which would "hol[d] out the very real possibility of nearly infinite and unpredictable liability for defendants." *Ayers*, 538 U.S. at 146 (2003) (quoting *Gottshall*, 512 U.S. at 546). And although the Supreme Court decisions developing the zone of danger test arose in the context of the Federal Employers' Liability Act (FELA), the Ninth Circuit has expressly held that the test governs all emotional distress claims, including those arising under federal maritime law.  *See Stacy v. Rederiet Otto Danielsen, A.S.*, 609 F.3d 1033, 1035 (9th Cir. 2010); *see also, e.g.*, *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337-38 (11th Cir. 2012) (per curiam) ("federal maritime law has adopted ... the 'zone of danger' test").

Indeed, courts apply *Metro-North* specifically to dismiss cruise line passenger lawsuits. For instance, in *Negron v. Celebrity Cruises, Inc.*, 360 F. Supp. 3d 1358 (S.D. Fla. 2018), a passenger and her family were disembarked to a hospital in Barbados and claimed that, while at the hospital, they were exposed to Ebola virus. *Id.* at 1360. The passengers were not allowed to return to the ship, which they claim added to their anxiety and they filed suit for "severe psychological damages, emotional distress, much personal discomfort, uncertainty, fear and lack of safety," and "undue expenses and costs." *Id.* Applying *Metro-North*, the Court dismissed their claim, holding the passengers cannot recover for emotional harm when they "do not specify any physical harm for which they seek recovery" and there were "no plausible allegations that the Plaintiffs sustained a 'physical impact' merely by being sent to a hospital" which had Ebola-infected patients in the same hospital. *Id.*

MALTZMAN & PARTNERS

681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

at 1362.

### 2.   Plaintiffs' Allegations Do Not Satisfy the Zone of Danger Test

The hard-and-fast rule from *Metro-North*, precluding a plaintiff's recovery for emotional distress claims "unless, and until, he manifests symptoms of a disease," requires dismissal of this action. 521 U.S. at 427.

Plaintiffs do not allege that they contracted COVID-19 as a result of exposure on the *Grand Princess*. Nor do they allege any symptoms. Indeed, they do not (and cannot) allege that they ever came into close contact with the disease aboard the ship such that they faced a probability of contracting it. Rather, Plaintiffs allege only that other passengers on their vessel were exposed to passengers who previously had disembarked the ship and were later confirmed to be infected with COVID-19. Specifically, they state that "at least two passengers" who disembarked from the previous cruise "had symptoms of the coronavirus," and that "sixty two passengers on board the Plaintiffs' cruise … were exposed to the passengers that were confirmed to be infected..." (Am. Compl. ¶¶ 41-42.)  That is nowhere near sufficient under *Metro-North*, which, again, squarely holds that a plaintiff cannot recover "unless, and until, he manifests symptoms of a disease." 521 U.S. at 427.[3]

Even setting aside *Metro-North*'s categorical rule that requires a diagnosis or symptoms of a disease as a threshold to recovery, Plaintiffs still would not have stated a claim under the zone of danger test. Federal courts routinely dismiss emotional distress claims when the plaintiff has not plausibly alleged that he actually suffered a physical impact or faced an imminent threat of physical harm. *See, e.g.*, *Bonner v. Union Pac.*, 123 F. App'x 777, 778 (9th Cir. 2005); *Smith v. Carnival Corp.*, 584 F. Supp. 2d 1343, 1355 (S.D. Fla. 2008); *Crawford v. Nat'l*

---

[3]Even if Plaintiffs *had* alleged symptoms, they would still face an independent bar to show that their fear of contracting COVID-19 was "genuine and serious"—something beyond "general concern for [one's] future health." *Ayers*, 538 U.S. at 157-58 (quoting *Smith v. A.C. & S., Inc.*, 843 F.2d 854, 859 (5th Cir.1988)); *see CSX Transp., Inc. v. Hensley*, 556 U.S. 838 (2009) (plaintiffs seeking fear-of-disease damages "must satisfy a high standard in order to obtain them").

MALTZMAN & PARTNERS

681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

MALTZMAN & PARTNERS

681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

1   *R.R. Passenger Corp.*, No. 3:15-CV-131 (JBA), 2015 WL 8023680, at *12 (D.

2   Conn. Dec. 4, 2015); *Fulk v. Norfolk S. Ry. Co.*, 35 F. Supp. 3d 749, 759 (M.D.N.C.

3   2014); *see also, e.g.*, *Goodrich v. Long Island Rail Rd. Co.*, 654 F.3d 190, 199 (2d

4   Cir. 2011) (affirming dismissal of IIED claim where no allegation that plaintiff was

5   in zone of danger).  Plaintiffs clearly have not claimed any "physical impact"; again,

6   it is black-letter law that an exposure to a source of disease is not a "physical

7   impact" under Supreme Court precedent. *Metro-North*, 521 U.S. at 430.

8          Nor have Plaintiffs plausibly alleged an "immediate risk of physical harm."

9   Plaintiffs' bare assertion that they "are at actual risk of immediate physical injury,"

10   is precisely the sort of "[t]hreadbare recital [] of the elements of a cause of action"

11   that cannot defeat a motion to dismiss. *Ashcroft v. Iqbal,* (2009) 556 U.S. 662, 678.

12   And even if mere exposure could create an "actual risk" under the zone of danger

13   test—and it cannot—Plaintiffs do not allege how, when or where they were actually

14   exposed to COVID-19. Plaintiffs conspicuously fail to assert that they came into

15   direct contact with any passengers or crew who had COVID-19 while onboard the

16   ship, and instead assert only that there were other passengers somewhere aboard the

17   ship—one with thousands of passengers and crew—who had come into contact with

18   people who were later discovered to be infected. Plaintiffs' First Amended

19   Complaint alleges no potential route of transmission.

20          To put this in perspective, there are 649 cities in California with populations

21   smaller than the 3,700-person population of the *Grand Princess*.[4] If Plaintiffs'

22   allegation that merely being in the same population of 3,700 people is sufficient to

23   satisfy the zone of danger requirement, then anyone who lived in any of those 649

24   cities could become subject to emotional distress liability whenever they invited

25   anyone onto their premises if it was later discovered someone else in the town had

26   COVID-19.

27   _____

28   [4] https://www.california-demographics.com/cities_by_population

DEFENDANT'S MOTION TO DISMISS                                    2:20-CV-03788-RGK-SK

Plaintiffs' failure to allege direct exposure makes their claim doubly deficient under *Metro-North*. The plaintiff in *Metro-North* had been consistently and intensely exposed to asbestos daily basis for a three-year period, and *still* the Court foreclosed recovery. *Metro-North*, 521 U.S. at 427. Plaintiffs allege nothing of the sort here.

Moreover, now that the window of potentially contracting COVID-19 has long passed, Plaintiffs' claim must fail under the widely accepted, independent rule that if "at the time the court reviews a claim, a plaintiff who no longer fears contracting the disease or that risk, may not pursue a claim for emotional distress based on the earlier fear." *Naeyaert v. Kimberly-Clark Corp.,* 2018 WL 6380749, at *8 (C.D. Cal. Sept. 28, 2018). This rule, consistent with the zone of danger test, ensures that only those whose fears actually manifest in the form of an actual diagnosis can recover, in the interest of preventing a "flood" of cases inherently "less susceptible to objective medical proof than are their physical counterparts." *Gottshall*, 512 U.S. at 552.

Cases that *do* find an immediate risk of harm provide a helpful contrast to Plaintiffs' inadequate claims here. These cases involve "*threatened physical contact* that caused, or might have caused, *immediate traumatic harm*." *Metro-North*, 521 U.S. at 430 (emphasis added) (collecting cases); *see, e.g.*, *Stacy*, 609 F.3d at 1035 (freighter nearly struck plaintiff's vessel and then struck another ship, killing its captain); *Sawyer Bros., Inc. v. Island Transporter, LLC*, 887 F.3d 23, 39 (1st Cir. 2018) (plaintiffs were aboard ferry that nearly capsized); *In re Clearsky Shipping Corp.*, No. Civ. 96-4099, 2002 WL 31496659, *1 (E.D. La. Nov. 7, 2002) (plaintiff was aboard a docked casino boat as a vessel collided with nearby wharf); *Hutton v. Norwegian Cruise Line Ltd.*, 144 F.Supp.2d 1325 (S.D. Fla. 2001) (plaintiffs aboard ship that collided with another vessel). Courts' consistent focus on near-miss collisions is unsurprising. The Supreme Court in adopting the zone of danger test emphasized that it would allow recovery for "emotional injury caused by the

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

apprehension of *physical impact*." *Gottshall*, 512 U.S. at 556. (emphasis added). And in subsequently describing the test, it has equated being "placed in immediate risk of physical harm" with "escap[ing] *instant physical harm*." *Ayers*, 538 U.S. at 146. Expanding the category of "immediate risk" claims to cover alleged exposure to a communicable disease which the Plaintiff did not contract would be unprecedented.

Because Plaintiffs were not within the zone of danger under *Metro-North*, their allegations of emotional distress, no matter how severe, are insufficient to survive a Motion to Dismiss. In *Gottshall*, one of the plaintiffs had suffered "insomnia, headaches, depression, and weight loss," followed by a "nervous breakdown." 512 U.S. at 539. The other had experienced "nausea, insomnia, cold sweats, and repetitive nightmares," plus weight loss, anxiety, and suicidal ideations. *Id.* at 536-37. The Supreme Court held that even these significant emotional injuries were not compensable because they did not stem from either a physical impact or a near-miss physical impact—*i.e.*, neither plaintiff was in the zone of danger. Indeed, even extremely grave physical results cannot be redressed unless the plaintiff was in the zone of danger. *Fulk v. Norfolk S. Ry. Co.*, 35 F. Supp. 3d 749, 757 (M.D.N.C. 2014) (no recovery for "self-inflicted gunshot wound" because plaintiff was never in zone of danger).

Plaintiffs' allegations of gross negligence are similarly barred by the Supreme Court's analysis. *Metro-North*'s zone of danger test governs all species of tort claims seeking emotional distress, whether or not styled as claims of "negligent infliction of emotional distress." *See Smith v. Union Pac. R.R. Co.*, 236 F.3d 1168, 1171 (10th Cir.2000) (*Metro-North* and *Gottshall* "focused on whether emotional injuries were generally compensable under FELA, rather than upon the specific cause of action."); *Fulk v. Norfolk S. Ry. Co.*, 35 F. Supp. 3d 749, 755 (M.D.N.C. 2014) ("Federal courts have consistently applied the zone of danger test to all stand-alone emotional distress claims.").

MALTZMAN & PARTNERS

681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

### 3. *Finding Plaintiffs' Claims Sufficient Would Invite the Exact Policy Consequences the Supreme Court Warned Against*

COVID-19 is now known to be a pandemic, is widespread and can be transmitted through airborne droplets. Many of its carriers can be pre-symptomatic or asymptomatic, thereby not exhibiting any symptoms.[5] If a plaintiff can recover for emotional distress based on a fear of exposure to a widespread disease like COVID-19, there will be no limit on who can recover in the wake of the pandemic. Any business, school, church or other venue alleged to have opened its doors a day too soon could be open to claims of negligence by anyone who stepped inside and afterward fears they may have come into contact with a source of COVID-19.  This concern is even more significant in relation to a widespread and often undetectable disease like COVID-19 which has infected more than 3 million people in the United States to date. Airline travel and public transportation will prove impossible. Individuals who attend a football game, transit through an airport, eat at a restaurant, or shop at a mall or store will all have potential emotional distress claims based entirely on having been allowed into a venue where someone later is found to have tested positive for COVID-19.

Allowing Plaintiffs' claims to proceed, in other words, endorses the "nearly infinite and unpredictable liability for defendants" that *Gottshall* and *Metro-North* expressly set out to prevent. *Ayers*, 538 U.S. at 146. Courts will be confronted with a "flood" of cases in which they "would be forced to make highly subjective determinations concerning the authenticity of claims for emotional injury, which are far less susceptible to objective medical proof than are their physical counterparts." *Gottshall*, 512 U.S. at 552. Businesses will in effect become insurers for the mental

---

[5] "Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease (COVID-19), Centers for Disease Control and Prevention (May 20, 2020), https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html; "How to Protect Yourself and Others," Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html.

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

DEFENDANT'S MOTION TO DISMISS                                    2:20-CV-03788-RGK-SK

well-being of everyone who passes through their doors. Such a burden would be impossible for any business, which is why the law categorically rejects such claims.

Rejection of Plaintiffs' unprecedented theory is all the more important in the maritime context. A "fundamental interest of federal maritime jurisdiction" is "the protection of maritime commerce." *The Dutra Grp. v. Batterton*, 139 S. Ct. 2275, 2287 (2019) (quotation marks omitted). The Supreme Court, recognizing that maritime law is increasingly legislative in nature, has urged courts to resist judicial expansions of liability and remedies that would "frustrate" this protective purpose. *Id.* Allowing unpredictable and potentially crushing liability for ocean carriers to potentially all of their passengers in the wake of a pandemic would so seriously inhibit maritime commerce that, even if *Metro-North* did not squarely forbid liability by its terms, principles of maritime law would independently require dismissal.

**C. Plaintiffs' Claims Also Fail Because They Do Not Allege That Their Distress Has Caused a Non-Trivial Physical Injury**

To further guard against open-ended liability based on fear of illness, courts impose, as an independent and additional requirement, that the claimed emotional distress must cause non-trivial physical consequences. In other words, "[g]eneral maritime law requires an 'objective manifestation' of the emotional injury—a physical injury or effect which arises from the emotional injury." *Wyler v. Holland Am. Line-USA, Inc.*, 2002 WL 32098495, at *1 (W.D. Wash. Nov. 8, 2002); *accord Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 477-478 (5th Cir. 2001); *Duet v. Crosby Tugs, LLC*, 2008 WL 5273688, at *3 (E.D. La. Dec. 16, 2008) ("Plaintiff's emotional distress was not provoked by a physical injury, rather, plaintiff's physical injury was provoked by emotional distress"); *Tassinari v. Key W. Water Tours, L.C.*, 480 F. Supp. 2d 1318, 1325 (S.D. Fla. 2007) ("[S]tand-alone claims for negligent infliction of emotional distress require a physical manifestation of emotional injury.").

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

Courts impose this physical-harm requirement because it "furnishes a 'guarantee of genuineness' to the fact-finder, thus limiting the prospects for a flood of fraudulent claims." *Williams v. Carnival Cruise Lines, Inc.*, 907 F. Supp. 403, 407 (S.D. Fla. 1995); *see also Tassinari*, 480 F. Supp. 2d at 1325 (S.D. Fla. 2007) (citing "the beneficial public policy of placing an objective and easily applied restriction on frivolous claims").

Under this rule, minor physical consequences are not sufficient. *See, e.g.*, *Williams v. Carnival Cruise Lines, Inc.*, 907 F. Supp. 403, 407 (S.D. Fla. 1995) (plaintiffs could not recover even though they were in the zone of danger because they "complain[ed] only of fear and/or seasickness which in most cases lasted no more than a few days"); *Ainsworth v. Penrod Drilling Co.*, 972 F.2d 546 (5th Cir. 1992) (barring recovery for emotional distress where the plaintiff suffered "trivial" injuries, including upset stomach, headache, and pulled muscles); *Ellenwood v. Exxon Shipping*, 795 F. Supp. 31, 35 (D. Me. 1992) (loss of sleep and loss of appetite insufficient).

Plaintiffs' First Amended Complaint contains no allegation of any physical manifestations of their emotional distress, let alone the serious and significant physical manifestation which is required. As explained, such allegations are a prerequisite to stating a claim for emotional distress, even when the plaintiff meets the zone of danger test (which Plaintiffs here have not).[6] Plaintiffs' allegations that they suffered from emotional distress from fear are exactly the sorts of generalized allegations of fear and anxiety that courts have held are clearly insufficient to support a claim for emotional distress. *Supra*; *see, e.g.*, *Williams v. Carnival Cruise*

---

[6] Three out of the thirty-one Plaintiffs herein claim they "were hospitalized" at some unspecified time after leaving the ship while two of thirty-one Plaintiffs claim their spouses tested positive for COVID-19 at some unspecified time. (Am. Compl. ¶ 38.) Significantly, none of these Plaintiffs allege they experienced symptoms of the virus. Plaintiffs do not allege why they were purportedly hospitalized. Plaintiffs also do not allege their hospitalizations were related in any way to COVID-19. Further, these scant claims are insufficient to defeat the instant Motion.

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

1  *Lines, Inc.*, 907 F. Supp. 403, 407 (S.D. Fla. 1995). Plaintiffs do not allege any non-
2  emotional injury other than the conclusory, vague statement that they "suffered from
3  bodily injury and/or emotional distress" (Am. Compl. ¶ 50)—a statement that does
4  not make clear whether any Plaintiff has suffered any actual bodily injury, let alone
5  all of them. Thus, even if Plaintiffs had adequately pled both that they contracted
6  COVID-19 as a result of Defendant's conduct and had pled facts sufficient to
7  establish they were actually within the zone of danger to contract the virus, their
8  claims would nonetheless fail for the separate reason that they have not adequately
9  pled a physical manifestation of their emotional distress.

10  **D. Plaintiffs' Nuisance Claim Fails**

11          Plaintiffs attempt to make out a claim for private nuisance by alleging
12  interference with their purported "property." (Am. Compl. ¶¶ 52-53); *see Shell*
13  *Offshore Inc. v. Greenpeace, Inc.*, 2012 WL 1931537, at *7 (D. Alaska May 29,
14  2012). Plaintiffs concede that admiralty law applies. (Am. Compl. ¶ 34; *supra*
15  section III.A.). That concession requires dismissal of Plaintiffs' nuisance claim:
16  "Federal courts in admiralty have not yet expressly recognized a private nuisance
17  cause of action, presumably due to the requirement that there be an unreasonable
18  interference with a *land* or *real property* interest." *Shell Offshore*, 2012 WL
19  1931537, at *7 (emphasis added).

20          But even if a cause of action existed under maritime law, an element of any
21  private nuisance claim is that the defendant interfered with property in which the
22  plaintiffs had some sort of concrete proprietary or possessory interest. Restatement
23  (Second) of Torts ¶ 821E; *see, e.g.*, *Alisu Investments, Ltd. v. TriMas Corp.*, No. CV
24  16-686-MWF (PJWX), 2019 WL 856396, at *10 (C.D. Cal. Jan. 16, 2019)
25  (California law). While Plaintiffs make a passing, conclusory allegation regarding
26  "property which plaintiffs had a right to use and/or occupy," they do not attempt to
27  identify any actual property interest. (Am. Compl. ¶ 52.) Any such allegation is
28  inherently implausible because all of the alleged events took place while Plaintiffs

*(left margin)* MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

DEFENDANT'S MOTION TO DISMISS                                    2:20-CV-03788-RGK-SK

MALTZMAN & PARTNERS

681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

1  "were passengers aboard the Grand Princess," a cruise ship that Plaintiffs allege was

2  "[a]t all times hereto … owned and operated" by Defendant. (Am. Compl. ¶ 35.)

3     Assuming arguendo that Plaintiffs had a cause of action in theory (which they

4  do not), Plaintiffs would still be barred from recovery because of the nature of their

5  claimed injuries. Plaintiffs admit that none of them contracted COVID-19 (Am.

6  Compl. ¶ 38); the sole injuries that Plaintiffs allege are those arising from the

7  purported "risk of immediate physical injury." (Am. Compl. ¶ 50.) Plaintiff do not

8  allege they experienced symptoms of the virus. All of their claims—including their

9  nuisance claim—are therefore foreclosed by *Metro-North*'s categorical rule, which

10 (as explained) holds that a plaintiff is not in the zone of danger "unless, and until, he

11 manifests symptoms of a disease." 521 U.S. 424, 427 (1997); *supra* section III.B.

12 *Metro-North*'s rule governs all species of tort claims seeking recovery based on a

13 fear of contracting a disease, whether or not styled as claims of "negligent infliction

14 of emotional distress." *See Smith*, 236 F.3d at 1171 (*Metro-North* and *Gottshall*

15 "focused on whether emotional injuries were generally compensable under FELA,

16 rather than upon the specific cause of action"); *Goodrich*, 654 F.3d at 199 (affirming

17 dismissal of IIED claim where no allegation that plaintiff was in zone of danger).

18 Therefore, Plaintiffs' nuisance claim fails as a matter of law.

19 **E. Plaintiffs' Claims for Punitive Damages are Foreclosed as a Matter of
20    Law and Should be Dismissed or Stricken**

21    Finally, even if Plaintiffs' claims could go forward on the merits, Plaintiffs'

22 claims for punitive damages are foreclosed as a matter of law and should therefore

23 be dismissed under Rule 12(b)(6) or stricken under Rule 12(f).

24    The Supreme Court has recently clarified several important limitations on the

25 availability of punitive damages in maritime cases, all of which make clear that

26 punitive damages are unavailable in cases alleging only emotional distress—at least

27 where that distress is not intentionally inflicted. In *The Dutra Group v. Batterton*,

28 139 S. Ct. 2275 (2019), the Supreme Court set forth a framework for deciding when

1    punitive damages are available under general maritime law, and then applied that

2    framework to hold that punitive damages are unavailable in claims for

3    unseaworthiness. First, where there is no federal statute authorizing punitive

4    damages, courts must determine "whether punitive damages have traditionally been

5    awarded" in the category of case at issue. *Id.* at 2283. If they are not, then the

6    imposition of punitive damages is precluded. *See Dunn v. Hatch*, 792 F. App'x 449,

7    451 (9th Cir. 2019) (*Batterton* "held that punitive damages cannot be recovered on

8    claims in admiralty where there is no historical basis for allowing such damages").

9    If the imposition of punitive damages would create "bizarre disparities in the law,"

10   that further counsels against their availability. *Batterton*, 139 S. Ct. at 2287. And in

11   determining whether to permit punitive damages, courts must proceed "cautiously in

12   light of Congress's persistent pursuit of uniformity in the exercise of admiralty

13   jurisdiction." *Id.* at 2278 (*Miles v. Apex Marine Corp.*, 498 U.S. 19, 27 (1986)).

14        Under this framework, Plaintiffs cannot recover punitive damages. While the

15   Ninth Circuit has occasionally upheld the imposition of punitive damages for certain

16   claims under general maritime law, *see Churchill v. F/V Fjord*, 892 F.2d 763, 772

17   (9th Cir. 1998), Defendant is aware of no binding precedent supporting the

18   imposition of punitive damages for negligently (even grossly negligently) inflicted

19   emotional distress. To the contrary, any "tradition" of punitive damages in maritime

20   cases is limited to cases where the defendant's conduct is truly "outrageous"—cases

21   of "enormity or deplorable behavior." *Dunn*, 792 F. App'x at 452.  And some courts

22   have held expressly that punitive damages are unavailable to "personal injury

23   claimants … except in exceptional circumstances such as willful failure to furnish

24   maintenance and cure to a seaman (who are viewed as special wards of the court

25   requiring additional protection), intentional denial of a vessel owner to furnish a

26   seaworthy vessel to a seaman, and in those very rare situations of intentional

27   wrongdoing." *In re Amtrak Sunset Ltd. Train Crash in Bayou Canot, Ala. on Sept.*

28   *22, 1993*, 121 F.3d 1421, 1429 (11th Cir. 1997). Recent decisions from the Eleventh

MALTZMAN & PARTNERS

681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

18

Circuit, home to much cruise ship litigation, confirm that punitive damages are not available in passenger personal injury cases. *Eslinger v. Celebrity Cruises, Inc.,* 772 Fed.Appx. 872, 872 (Mem)(11ᵗʰ Cir. 2019); *See also, Simmons v Royal Caribbean Cruises, Ltd.,* 423 F. Supp.3d. 1350 (S.D. Fla 2019) (there is no historical justification for punitive damages in cruise passenger negligence cases). As in *Batterton*, the absence of case law supporting the availability of punitive damages in suits for negligently inflicted emotional distress "is practically dispositive." *Id.* at 2284.

But even if the history of punitive damages under maritime law were more equivocal (which it is not), the imposition of punitive damages here would create the same "bizarre disparit[y] in the law" that demanded foreclosure of punitive damages in *Batterton*. The Court there noted that, if punitives were permitted for unseaworthiness claims, "a mariner could make a claim for punitive damages if he was *injured* onboard a ship, but," because of the Court's prior decision in *Miles*, "his estate would lose the right to seek punitive damages if he *died* from his injuries." 139 S. Ct. at 2287 (emphasis added). The same disjoint would occur here, as the Death on the High Seas Act (DOHSA) expressly forbids the imposition of punitive damages for deaths caused by incidents more than three miles offshore. *See* 46 U.S.C. § 30303 (allowing damages only for "pecuniary loss"); *Batterton*, 139 S. Ct. at 2285 n.8. Under Plaintiffs' novel theory, passengers alleging exposure to a disease on the high seas can freely recover punitive damages if they never contracted the disease, and yet, if those same passengers died from the disease, DOHSA would squarely bar their claim for punitive damages. To avoid that arbitrary differential treatment, and to properly "pursue the policy expressed in congressional enactments" like DOHSA, punitive damages must be foreclosed. *Id.* at 2281.

The policies that drive strict application of the zone of danger test in emotional distress cases, *see supra* section III.B, further cement that punitive

DEFENDANT'S MOTION TO DISMISS                                    2:20-CV-03788-RGK-SK

1  damages cannot be available in cases involving emotional distress based on alleged
2  disease exposure. To the extent that liability *alone* did not create the "infinite and
3  unpredictable liability," *Ayers*, 538 U.S. at 146, the "stark unpredictability of
4  punitive awards," *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 499 (2008), would
5  make that threat an unavoidable reality. The mere allegation that plaintiff might be
6  entitled to recover punitive damages will only further the flood of litigation that the
7  Supreme Court has so clearly warned against in fear of disease cases.  The open-
8  ended threat of punitive damages would encourage more frivolous fear of disease
9  cases and hobble "maritime commerce"—the "fundamental interest served by
10  federal maritime jurisdiction." *Batterton*, 139 S. Ct. at 2287.[7]

11  **IV.   CONCLUSION**

12         For the foregoing reasons, Defendant requests that the Court grant its Motion
13  and dismiss this case with prejudice.

15  DATED: July 10, 2020                MALTZMAN & PARTNERS

17                          By:    *s/ Jeffrey B. Maltzman*
18                                 Jeffrey B. Maltzman
19                                 Edgar R. Nield
                                   Gabrielle De Santis Nield
20                                 Rafaela P. Castells
21                                 *Attorneys for Defendant,*
                                   *Princess Cruise Lines Ltd.*

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

---

[7] Even if punitive damages were available, the Supreme Court has held that "under maritime law, the maximum ratio of punitive damages to compensatory damages is 1-1." *Exxon Valdez v. Exxon Mobil*, 568 F.3d 1077, 1079 (9th Cir. 2009). If this Court does not dismiss or strike the request for punitive damages altogether, the Court should limit Plaintiffs' damages accordingly.

DEFENDANT'S MOTION TO DISMISS                          2:20-CV-03788-RGK-SK