Jeffrey B. Maltzman, CA Bar No. 131758
Edgar R. Nield, CA Bar No. 135018
Gabrielle De Santis Nield, CA Bar No. 110930
Rafaela P. Castells, CA Bar No. 290828
MALTZMAN & PARTNERS, P.A.
681 Encinitas Boulevard, Suite 315
Encinitas, CA 92024
Telephone: (760) 942-9880
Facsimile: (760) 942-9882
jeffreym@maltzmanpartners.com
edn@maltzmanpartners.com
gabn@maltzmanpartners.com
rafaelac@maltzmanpartners.com

Attorneys for Defendant PRINCESS CRUISE LINES, LTD.
(additional counsel on signature page)

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRIS PARKER, TOM ROCHAT, JAMES BOLDEN, PAULETTE SCHMIDT, DEBORAH PRYOR-BRUNS, DENNIS BRUNS, DIANE CASASSA-ZIMMERMAN, CHRIS GRADY, BELINDA DILL, JACK DILL, GUADALUPE MENDEZ, MACIELO SALAZAR, ISABELLE NG, TOM NG, SHEILA PRYOR, JOE PRYOR, ROBIE ROWE, WILEY ROWE, LARRY SCHWINDT, CONNIE SCHWINDT, MICHELLE SMITH, STEVEN SMITH, DONALD STAIR, EILEEN STAIR, STELLA TORREZ, CINDY VAN HORN, DAVID VAN HORN, DEBRA DALTON, MICHAEL DALTON, AURORA KIRBY, and MARIO BATZ,<br><br>Plaintiffs,<br>v.<br><br>PRINCESS CRUISE LINES, LTD.,<br><br>Defendant. | CASE NO.: 2:20-CV-03788-RGK-SK<br><br>**DEFENDANT PRINCESS CRUISE LINES, LTD.'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>Date: September 28, 2020<br>Time: 9:00 a.m.<br>Judge: Hon. R. Gary Klausner<br>Courtroom: 850<br><br>Magistrate: Hon. Steve Kim<br>Filed: 04/24/2020 |

# TABLE OF CONTENTS

I.   INTRODUCTION ....................................................................................... 1

II.  BACKGROUND .......................................................................................... 2

III. LEGAL STANDARD ................................................................................. 3

III. MEMORANDUM OF LAW ....................................................................... 3

    A.  Federal Maritime Law Applies to Plaintiffs' Claims ............................ 3

    B.  Plaintiffs Cannot Recover for Emotional Distress Because They Were Not Within the Zone of Danger for Contracting COVID-19 ........ 4

        1.  To Be Within the Zone of Danger for Emotional Distress based on Exposure to a Disease, Plaintiffs Must Have Both Contracted and Suffered Symptoms of the Disease ............ 4

        2.  Plaintiffs' Allegations Are Insufficient Under the Governing Standard ................................................................... 5

        3.  Finding Plaintiffs' Claims Sufficient Would Invite the Exact Policy Consequences the Supreme Court Has Warned Against ................................................................................ 8

    C.  Plaintiffs' Claims Also Fail Because They Do Not Allege That Defendant Has Caused any Non-Trivial Physical Injury ....................... 9

    D.  Plaintiffs' Nuisance Claim Fails .......................................................... 11

    E.  Plaintiffs Allege an Incorrect Standard of Care .................................. 12

    F.  Plaintiff's Loss of Consortium Claim is Foreclosed as a Matter of Law and Should be Dismissed or Stricken .......................................... 12

    G.  Plaintiffs' Claims for Punitive Damages are Foreclosed as a Matter of Law and Should be Dismissed or Stricken .......................... 13

IV. CONCLUSION ......................................................................................... 16

# **TABLE OF AUTHORITIES**

Cases

*Adamson v. Port of Bellingham*, 907 F.3d 1122 (9th Cir. 2018) .................................. 4

*Alisu Investments, Ltd. v. TriMas Corp.*, 2019 WL 856396 (C.D. Cal. Jan. 16, 2019) ................................................................................................................................ 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................... 3

*Benefiel v. Exxon Corp.*, 959 F.2d 805 (9th Cir. 1992) ............................................. 10

*Casorio v. Princess Cruise Lines*, Ltd., 677 Fed. Appx. 361 (9th Cir. 2017) ........... 12

*Chan v. Soc'y Expeditions, Inc.,* 39 F.3d 1398 (9th Cir. 1994) ........................... 12, 13

*Churchill v. F/V Fjord*, 892 F.2d 763 (9th Cir. 1998) .............................................. 14

*Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532 (1994) .................................. 6, 8

*Duet v. Crosby Tugs, LLC*, 2008 WL 5273688 (E.D. La. Dec. 16, 2008) ................ 10

*Dunn v. Hatch*, 792 F. App'x 449 (9th Cir. 2019) .................................................... 13

*Eslinger v. Celebrity Cruises, Inc.,* 772 Fed. Appx. 872 (11th Cir. 2019) ................ 14

*Everett v. Carnival Cruise Lines*, 912 F.2d 1355 (11th Cir. 1990) ........................... 12

*Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008) ................................................. 15

*Hesterly v. Royal Caribbean Cruises, Ltd.*, 515 F. Supp. 2d 1278 (S.D. Fla. 2007) 12

*In re Amtrak Sunset Ltd. Train Crash in Bayou Canot, Ala. on Sept. 22, 1993*, 121 F.3d 1421 (11th Cir. 1997) .................................................................................... 14

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995) .. 4

*Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474 (5th Cir. 2001) ........................... 10

*Miles v. Apex Marine Corp.*, 498 U.S. 19 (1986) ............................................... 14, 15

*Norfolk & Western R. Co. v. Ayers*, 538 U.S. 135 (2003) .......................................... 4

*Shell Offshore Inc. v. Greenpeace, Inc.*, 2012 WL 1931537 (D. Alaska May 29, 2012) ....................................................................................................................... 11

*Simmons v Royal Caribbean Cruises, Ltd.,* 423 F. Supp.3d. 1350 (S.D. Fla 2019) . 14

*Smith v. Union Pac. R.R. Co.*, 236 F.3d 1168 (10th Cir.2000) .................................. 7

*Stacy v. Rederiet Otto Danielsen, A.S.*, 609 F.3d 1033 (9th Cir. 2010) ..................... 5

*Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313 (M.D. Fla. 2002) ........................... 12

*Taghadomi v. United States*, 401 F.3d 1080 (9th Cir. 2005) ....................................... 3

*Tassinari v. Key W. Water Tours, L.C.*, 480 F. Supp. 2d 1318 (S.D. Fla. 2007) ...... 10

*The Dutra Grp. v. Batterton*, 139 S. Ct. 2275 (2019) ................................. 9, 13, 14, 15

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363 (9th Cir. 1992) ........................................................................................................................ 4

*Weissberger v. Princess Cruise Lines, Ltd.*, 2020 WL 3977938 (C.D. Cal. July 14, 2020) ........................................................................................................ 1, 4, 5, 7, 8, 9

*Williams v. Carnival Cruise Lines, Inc.*, 907 F. Supp. 403 (S.D. Fla. 1995) ............ 10

*Williams v. United States*, 711 F.2d 893 (9th Cir.1983) ............................................. 3

*Wyler v. Holland Am. Line-USA, Inc.*, 2002 WL 32098495 (W.D. Wash. Nov. 8, 2002) .................................................................................................................... 10

## Statutes

46 U.S.C. §30303 ........................................................................................................ 15

## Rules

Fed. Rule Civ Pro 12(b)(6) .................................................................................... 3, 13

Fed. Rule Civ Pro 12(f) ............................................................................................. 13

L.R. 7-3 ......................................................................................................................... 1

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

Defendant PRINCESS CRUISE LINES, LTD. files this Motion to Dismiss Plaintiffs' Second Amended Complaint (SAC) (DE 43). This motion is made following several conferences of counsel pursuant to Local Rule 7-3 which took place on June 23, 2020, June 25, 2020 and June 26, 2020..

## I. INTRODUCTION

Supreme Court precedent allows an individual to recover for emotional distress stemming from a disease only if he plausibly alleges contracting and suffering harmful symptoms of that disease. This Court in *Weissberger v. Princess Cruise Lines, Ltd.*, 2020 WL 3977938 (C.D. Cal. July 14, 2020), applied that hard-and-fast rule to dismiss claims of emotional distress based on alleged exposure to COVID-19 aboard the *Grand Princess* cruise ship. The same reasoning requires dismissal of this Complaint too. While Plaintiffs here make various efforts to distinguish their allegations from those held insufficient in *Weissberger*, the crux of their complaint is exactly the same. The Plaintiffs here admittedly did not contract COVID-19; all of their alleged harms stem only from purported *exposure* to a disease they never contracted. Like the Plaintiffs in *Weissberger*, "Plaintiffs in this case cannot recover … based solely on their proximity to individuals with COVID-19 and resulting fear of contracting the disease." *Id.* at *3.

Allowing Plaintiffs' claims to proceed would thus upend the rule of *Metro-North*, which forbids recovery even where a plaintiff alleges a massive, prolonged exposure to a disease-causing agent. It would also upend the policies that drove the imposition of that rule in the first place. The foundation of *Metro-North* and *Weissberger* is that, if courts permit recovery based on exposure to a disease, a "flood of trivial suits" will follow, opening the door to "unlimited and unpredictable liability." *Id.* at *4. That prospect demands a categorical rule, even though such rules may bar cases that are not in fact trivial, as the "relevant question concerns not simply recovery in an individual case, but the consequences and effects of a rule of law that would permit that recovery." *Id.* (quoting *Metro-North*, 521 U.S. at 438).

Even if recovery were permitted in theory, the failure to allege that any physical manifestation was caused by Defendant's conduct independently requires dismissal. At minimum Plaintiffs allege the incorrect standard of care, and their claims for loss of consortium, nuisance, and punitive damages are foreclosed as a matter of law.

## II.   BACKGROUND

Plaintiffs are 31 individuals who allege that they were aboard the *Grand Princess* cruise ship on a voyage with 3,500 other passengers and crew that departed from San Francisco on February 21, 2020. (SAC ¶¶ 1-31, 78.) Plaintiffs allege that on the day they boarded, Defendant was aware that at least two passengers who had disembarked that same day had "symptoms of" COVID-19, and that 62 other passengers had been "exposed to" those two passengers who showed symptoms. (*Id.* ¶¶ 75-77.) Plaintiffs claim that had they known "of this actual risk of exposure prior to boarding, they would have never boarded the ship," and that if they learned of the risk by February 26, they would have "disembarked at the first port of call in Honolulu." (*Id.* ¶ 83.) On that basis, they bring claims for negligence, gross negligence, and nuisance. (*Id.* ¶¶ 74-96.) One Plaintiff seeks to recover for loss of consortium based on injuries suffered by her husband, who allegedly contracted COVID-19 but who is not a Plaintiff in this case. (*Id.* ¶ 71.) All Plaintiffs seek punitive damages. (*Id.* ¶ 96.)

The Second Amended Complaint admits that "none of these Plaintiffs is known to have tested positive for COVID-19." (*Id.* ¶ 43.) And the Complaint does not allege that any of the Plaintiffs contracted the disease as a result of Defendant's conduct, let alone any concrete, harmful symptoms stemming from contraction of the disease. Rather, Plaintiffs' claims rest on the allegation that they "were exposed to an actual risk of immediate physical injury from COVID-19 exposure." (*Id.* ¶ 81.) In particular, Plaintiffs allege that they "were interacting with other passengers and crew members who exhibited symptoms consistent with COVID-19 infections while

aboard the Grand Princess." (*Id.*; *see, e.g.*, *id.* ¶ 53.) "In this regard," Plaintiffs claim, "Princess placed each of these passengers in the 'zone of danger' where they were at risk of contracting the deadly COVID virus." (*Id.* ¶ 81.) Several of the Plaintiffs allege "extreme anxiety" or a variety of physical "symptoms" that "relate directly to [their] exposure to the COVID-19 virus." (*E.g.*, *id.* ¶ 47.) But, again, they do not claim to have contracted COVID-19 as a result of this exposure, and they do not allege that these physical effects were symptoms of a contracted illness. They also do not allege that Defendant's conduct was the factual cause of these symptoms; they instead claim that these effects "relate directly" to their alleged exposure. (*Id.*)

## III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (citations omitted). "A pleading that offers … a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. MEMORANDUM OF LAW

### A. Federal Maritime Law Applies to Plaintiffs' Claims

As Plaintiffs acknowledge by invoking this Court's maritime jurisdiction and stating that the case "involves a maritime tort" (SAC ¶ 34), Federal maritime law applies to Plaintiffs' claims. Maritime law applies when "(1) the alleged wrong occurred on or over navigable waters, and (2) the wrong bears a significant relationship to traditional maritime activity." *Williams v. United States*, 711 F.2d 893, 896 (9th Cir.1983). "'[V]irtually every activity involving a vessel on navigable waters" is a "traditional maritime activity sufficient to invoke maritime jurisdiction.'" *See Taghadomi v. United States*, 401 F.3d 1080, 1087 (9th Cir. 2005) ((quoting *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S.

527, 542 (1995))). And when a case falls within a court's maritime jurisdiction, "[s]ubstantive maritime law"—not state law—"controls the claim, 'whatever the forum or asserted basis of jurisdiction.'" *Adamson v. Port of Bellingham*, 907 F.3d 1122, 1125-26 (9th Cir. 2018) (quoting *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 366 n.1 (9th Cir. 1992)).

### B. Plaintiffs Cannot Recover for Emotional Distress Because They Were Not Within the Zone of Danger for Contracting COVID-19

#### 1. To Be Within the Zone of Danger for Emotional Distress based on Exposure to a Disease, Plaintiffs Must Have Both Contracted and Suffered Symptoms of the Disease

The Supreme Court's decision in *Metro-North* holds that a plaintiff alleging emotional distress from exposure to a disease "cannot recover unless, and until, he manifests symptoms of a disease." *Metro-North Commuter R.R. v. Buckley*, 521 U.S. 424, 426-27 (1997). The Court later reaffirmed *Metro-North*'s categorical rule, explaining in *Ayers* that "emotional distress damages may not be recovered" by "disease-free" plaintiffs. *Norfolk & Western R. Co. v. Ayers*, 538 U.S. 135, 141 (2003). The Court has "decline[d] to blur, blend, or reconfigure" the "clear line" between "disease-free" plaintiffs, who cannot recover, and those "who suffer from a disease," who can recover under certain conditions. *Id.*; *see also id.* at 146 (explaining that because the plaintiff in *Metro-North* "had a clean bill of health," the Court "rejected his entire claim for relief"). The Court has also made clear that its rule applies to any claim based on alleged exposure to a potential source of disease—specifically including "germ-laden air." *Metro-North*, 521 U.S. at 437.

This Court in *Weissberger* applied *Metro-North*'s categorical rule to dismiss fifteen lawsuits filed by *Grand Princess* passengers who had not alleged any symptoms of, or diagnoses with, COVID-19. *See* 2020 WL 3977938. This Court recognized that although the Supreme Court decisions developing the zone of danger test arose in the context of the Federal Employers' Liability Act (FELA), the Ninth Circuit has expressly held that the test governs all emotional distress claims

brought under federal common law, including maritime law. *Id.* (citing *Stacy v. Rederiet Otto Danielsen, A.S.*, 609 F.3d 1033, 1035 (9th Cir. 2010)). And this Court agreed that, under the rule of *Metro North*, the plaintiffs could not recover for negligently inflicted emotional distress "based solely on their proximity to individuals with COVID-19 and resulting fear of contracting the disease." *Id.* at *4. If recovery were permitted for mere exposure, the Court explained, it "would lead to a flood of trivial suits, and open the door to unlimited and unpredictable liability." *Id.*

This Court also declined the plaintiffs' invitation to "carve out the cruise-ship industry from *Metro-North*'s mandate." *Id.* It explained that the "risk of exposing individuals to COVID-19 is not unique to cruise ships—quite the contrary, in fact, as restaurants, bars, churches, factories, nursing homes, prisons, and other establishments across the country continue to report COVID-19 cases." *Id.* Making exceptions for certain industries, or leaving it to factfinders to separate meritorious claims from trivial ones, "would seem at odds with [*Metro-North*'s] holding that case-by-case determinations of negligence are not an adequate guard against unlimited and unpredictable liability." *Id.* (quoting *Metro-North*, 521 U.S. at 427).

### 2. *Plaintiffs' Allegations Are Insufficient Under the Governing Standard*

Under the rule of *Metro-North*, as applied in *Weissberger*, Plaintiffs' claims must be dismissed. No Plaintiff alleges that they contracted COVID-19. To the contrary, the Second Amended Complaint concedes that "none of these Plaintiffs is known to have tested positive for COVID-19." (SAC ¶ 43.) Plaintiffs make clear that they do not allege physical symptoms of COVID-19, but instead allege "symptoms" that "relate directly to [their] *exposure*" to the disease—*i.e.*, manifestations of their claimed distress but *not* COVID-19, a disease none of the Plaintiffs contracted. *Id. Metro-North*'s rule thus requires dismissal.

To be sure, Plaintiffs' allegations are different from those in *Weissberger* in several respects. Plaintiffs allege "contact" with individuals who either tested

positive with COVID-19 or exhibited symptoms of the disease. (*E.g.*, SAC ¶ 45.) Several Plaintiffs allege "extreme" emotional distress stemming from their alleged exposures. (*Id.*) And several Plaintiffs allege a host of physical manifestations that they claim "relate directly" to their "exposure." (*Id.*)

But none of these differences are material under the categorical rule of *Metro-North* and *Weissberger*, or under the rationales that support that rule. As this Court recognized in *Weissberger*, the very point of *Metro-North* is that even a significant and prolonged exposure to contagion cannot establish that an individual was within the "zone of danger." The employer in *Metro-North* had negligently exposed the plaintiff to a "massive" and "tangible" amount of asbestos, placing him in direct, close contact with asbestos for about an hour a day over a three-year period as he removed asbestos from pipes, often "covering himself with insulation dust that contained asbestos." *Id.* at 427. The plaintiff feared that this intense prolonged exposure to asbestos increased his chances of dying from cancer and the plaintiff introduced expert testimony supporting that his risk of cancer had in fact increased. *Id.* The Supreme Court nonetheless held that the plaintiff could not recover for emotional distress. *Id.* at 430. If "a simple (though extensive) contact with a carcinogenic substance" were sufficient to permit recovery, it would not "offer much help in separating valid from invalid emotional distress claims." *Id.* at 434. *Metro-North* suggests no "significant exposure" exception to its rule that exposure alone is insufficient; it says directly the opposite.

Nor can the severity of Plaintiffs' alleged *distress* be the difference-maker, even if that distress manifested physically. In *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532 (1994), the foundation of the zone-of-danger test applied in *Metro-North*, one of the plaintiffs had suffered "insomnia, headaches, depression, and weight loss," followed by a "nervous breakdown." *Id.* at 539. The other plaintiff had experienced "nausea, insomnia, cold sweats, and repetitive nightmares," plus weight loss, anxiety, and suicidal ideations. *Id.* at 536-37. The Supreme Court held that

even these extreme results were not compensable because they did not stem from either a physical impact or a near-miss physical impact—neither plaintiff was in the zone of danger. Courts applying *Gottshall* have held that even the gravest of physical results cannot be redressed unless the plaintiff was in the zone of danger. *See, e.g.*, *Fulk v. Norfolk S. Ry. Co.*, 35 F. Supp. 3d 749, 757 (M.D.N.C. 2014) (no recovery for "self-inflicted gunshot wound" because plaintiff was never in zone of danger).

In imposing these strict limits on emotional distress claims, the Supreme Court has contrasted claims where a plaintiff alleges emotional harm "brought on by a physical injury, for which pain and suffering recovery is permitted." *Ayers*, 538 U.S. at 147. For example, a plaintiff who has contracted asbestosis—"a chronic, painful and concrete reminder that [a plaintiff] has been injuriously exposed to a substantial amount of asbestos"—can "seek compensation for fear of cancer as an element of his asbestosis-related pain and suffering damages." *Id.* at 156, 158. But the same exposed plaintiff who did not contract asbestosis cannot recover, no matter how intense or prolonged his exposure to the disease-causing agent. *Id.* at 156. That limitation, the Supreme Court has explained, is necessary to "reduce[] the universe of potential claimants to numbers neither 'unlimited' nor 'unpredictable.'" *Id.* at 157.

Plaintiffs' allegations of gross negligence are similarly barred by the Supreme Court's analysis. *See Weissberger*, 2020 WL 3977938, at *2. Indeed, *Metro-North*'s zone of danger test governs all species of tort claims seeking emotional distress, whether or not styled as claims of "negligent infliction of emotional distress." *See id.*; *Smith v. Union Pac. R.R. Co.*, 236 F.3d 1168, 1171 (10th Cir.2000) (*Metro-North* and *Gottshall* "focused on whether emotional injuries were generally compensable under FELA, rather than upon the specific cause of action."); *Fulk v. Norfolk S. Ry. Co.*, 35 F. Supp. 3d 749, 755 (M.D.N.C. 2014) ("Federal courts have consistently applied the zone of danger test to all stand-alone emotional distress

claims.").

### 3. Finding Plaintiffs' Claims Sufficient Would Invite the Exact Policy Consequences the Supreme Court Has Warned Against

COVID-19 is a worldwide, airborne pandemic that to date has infected over 21.9 million people, including over 5.4 million in the United States alone.[1] If a plaintiff can recover for emotional distress based on a fear of exposure to COVID-19, there will be no limit on who can recover in the wake of the pandemic. *Gottshall*, *Metro-North*, and *Ayers* warned that if courts permit recovery without any plausible allegation of harmful symptoms, they will be confronted with a "flood" of cases in which they "would be forced to make highly subjective determinations concerning the authenticity of claims for emotional injury, which are far less susceptible to objective medical proof than are their physical counterparts." *Gottshall*, 512 U.S. at 552. This Court has recognized that if it "were to adopt the rule invited by Plaintiffs, this would inevitably lead to the scenario the Court in *Gottshall* was trying to avoid. Indeed, given the prevalence of COVID-19 in today's world, Plaintiff's proposed rule would lead to a flood of trivial suits, and open the door to unlimited and unpredictable liability." *Weissberger*, 2020 WL 3977938, at *4. Any business or other venue alleged to have opened its doors a day too soon could be open to claims of negligence by anyone who stepped inside and afterward fears they may have come into contact with a source of COVID-19. Businesses will in effect become insurers for the emotional well-being of everyone who passes through their doors. Such a burden would be impossible for any business, which is why the law categorically rejects such claims.

The ability of individual defendants like Princess to prove they were not negligent in individual cases does not mitigate these concerns. Nor do the Supreme Court's cases countenance exceptions for certain businesses or industries. The

---

[1] *See* Johns Hopkins, *COVID-19 Dashboard*, https://coronavirus.jhu.edu/map.html (Aug. 18, 2020).

Supreme Court's cases stand for the principle that "case-by-case determinations of negligence are not an adequate guard against unlimited and unpredictable liability." *Weissberger*, 2020 WL 3977938, at *4. "That is why the Supreme Court imposed a categorical, threshold rule on [the plaintiff's] ability to recover for his exposure to insulation dust containing asbestos, even though his employer in fact 'conceded negligence.'" *Id.* (quoting *Metro-North*, 521 U.S. at 436). "Here the relevant question concerns not simply recovery in an individual case, but the consequences and effects of *a rule of law that would permit that recovery*." *Id.* (quoting 521 U.S. at 438). Plaintiffs' theory of liability would offer no meaningful limitation on liability. That is precisely why this Court "decline[d] to carve out the cruise-ship industry from *Metro-North*'s mandate." *Id.*

Indeed, rejection of Plaintiffs' unprecedented theory is all the more important in the maritime context. A "fundamental interest of federal maritime jurisdiction" is "the protection of maritime commerce." *The Dutra Grp. v. Batterton*, 139 S. Ct. 2275, 2287 (2019) (quotation marks omitted). The Supreme Court, recognizing that maritime law is increasingly legislative in nature, has urged courts to resist judicial expansions of liability and remedies that would "frustrate" this protective purpose. *Id.* Allowing unpredictable and potentially crushing liability for ocean carriers to all of their passengers in the wake of a pandemic would so seriously inhibit maritime commerce that, even if *Metro-North* did not squarely forbid liability by its terms, principles of maritime law would independently require dismissal.

**C. Plaintiffs' Claims Also Fail Because They Do Not Allege That Defendant Has Caused any Non-Trivial Physical Injury**

To further guard against open-ended liability based on fear of illness, courts impose, as an independent and additional requirement, that the claimed emotional distress cause non-trivial physical consequences. In other words, "[g]eneral maritime law requires an 'objective manifestation' of the emotional injury—a physical injury or effect which arises from the emotional injury." *Wyler v. Holland*

*Am. Line-USA, Inc.*, 2002 WL 32098495, at *1 (W.D. Wash. Nov. 8, 2002); *accord Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 477-478 (5th Cir. 2001); *Duet v. Crosby Tugs, LLC*, 2008 WL 5273688, at *3 (E.D. La. Dec. 16, 2008) ("Plaintiff's emotional distress was not provoked by a physical injury, rather, plaintiff's physical injury was provoked by emotional distress"); *Tassinari v. Key W. Water Tours, L.C.*, 480 F. Supp. 2d 1318, 1325 (S.D. Fla. 2007) ("[S]tand-alone claims for negligent infliction of emotional distress require a physical manifestation of emotional injury."). Courts impose this physical-harm requirement because it "furnishes a 'guarantee of genuineness' to the fact-finder, thus limiting the prospects for a flood of fraudulent claims." *Williams v. Carnival Cruise Lines, Inc.*, 907 F. Supp. 403, 407 (S.D. Fla. 1995); *see also Tassinari*, 480 F. Supp. 2d at 1325 (S.D. Fla. 2007) (citing "the beneficial public policy of placing an objective and easily applied restriction on frivolous claims").

While several Plaintiffs allege various physical "symptoms" alongside descriptions of their alleged exposure (*e.g.*, SAC ¶ 48), they do not allege that Defendant's conduct, or even the fear of contracting COVID-19 more generally, was the *cause* of those manifestations, as their claim for negligence requires. They instead state only that their distress and manifestations "relate directly" to their exposure. (*Id.*) But causation requires more than a mere *relationship* between conduct and harm. *See, e.g., Benefiel v. Exxon Corp.*, 959 F.2d 805, 807 (9th Cir. 1992) ("uniformly accepted principles of tort law … require a plaintiff to prove more than that the defendant's action triggered a series of other events that led to the alleged injury"). Fear of COVID-19 is ubiquitous; if plaintiffs in fear-of-disease cases were not required to plausibly allege real causal links between a business's conduct and their injuries, there would be truly no limit to the range of entities that could be liable. Thus, even if Plaintiffs were in the category of individuals who could recover under *Metro-North*, their claims would still be precluded because they have not alleged any physical manifestation of their distress caused by Defendant's

conduct.

### D. Plaintiffs' Nuisance Claim Fails

Plaintiffs attempt to make out a claim for private nuisance by alleging interference with their purported "property." (SAC ¶¶ 87-88); *see Shell Offshore Inc. v. Greenpeace, Inc.*, 2012 WL 1931537, at *7 (D. Alaska May 29, 2012). But "[f]ederal courts in admiralty have not yet expressly recognized a private nuisance cause of action, presumably due to the requirement that there be an unreasonable interference with a land or real property interest." *Shell*, 2012 WL 1931537, at *7.

Even if a cause of action existed under maritime law, an element of any private nuisance claim is that the defendant interfered with property in which the plaintiffs had a concrete proprietary or possessory interest. Restatement (Second) of Torts ¶ 821E; *see, e.g.*, *Alisu Investments, Ltd. v. TriMas Corp.*, 2019 WL 856396, at *10 (C.D. Cal. Jan. 16, 2019) (California law). While Plaintiffs make a passing, conclusory allegation regarding "property which plaintiffs had a right to use and/or occupy," they do not attempt to identify any actual property interest. (SAC ¶ 87.) Any such allegation is inherently implausible because all the alleged events took place while Plaintiffs "were passengers aboard the Grand Princess," a cruise ship that Plaintiffs allege was "[a]t all times hereto … owned and operated" by Defendant. (*Id.* at ¶ 35.)

And even assuming that Plaintiffs had a cause of action in theory (which they do not), Plaintiffs would still be barred from recovery because of the nature of their claimed injuries. Plaintiffs admit that none of them contracted COVID-19 (*id.* at ¶ 43); the sole injuries that Plaintiffs allege are those arising from the purported "risk of immediate physical injury" (*id.* at ¶ 78). All of their claims—including their nuisance claim—are therefore foreclosed by *Metro-North*'s categorical rule; *supra* section III.B. Again, *Metro-North*'s rule governs all species of tort claims seeking recovery based on a fear of contracting a disease, whether or not styled as claims of "negligent infliction of emotional distress." *See Smith*, 236 F.3d at 1171 (*Metro-*

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

*North* and *Gottshall* "focused on whether emotional injuries were generally compensable under FELA, rather than upon the specific cause of action"); *Goodrich*, 654 F.3d at 199 (affirming dismissal of IIED claim where no allegation that plaintiff was in zone of danger).[2]

### E. Plaintiffs Allege an Incorrect Standard of Care

"Maritime law requires a cruise ship 'to exercise reasonable care under the circumstances of each case.'" *Casorio v. Princess Cruise Lines*, Ltd., 677 Fed. Appx. 361, 362 (9th Cir. 2017) (*citing Chan v. Soc'y Expeditions, Inc.,* 123 F.3d 1287, 1290 (9th Cir. 1997) ); *see also, e.g.*, *Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358 (11th Cir. 1990) ("the benchmark against which a shipowner's behavior must be measured is ordinary reasonable care under the circumstances"). "To require more would be to impose a higher burden on common carriers than California law requires." *Casorio*, 677 Fed. Appx. at 362. The uniformly accepted maritime duty of reasonable care precludes Plaintiffs' attempt to hold Princess to a higher "common carrier" standard of care. SAC ¶ 74; *see Thompson*, 174 F. Supp. 3d at 1342. Plaintiffs' allegations based on an improper heightened standard of care should be dismissed with prejudice because they fail as a matter of law. *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1318 (M.D. Fla. 2002) (dismissing negligence claim because plaintiff alleged improper heightened standard of care instead of alleging "reasonable care under the circumstances"); *Hesterly v. Royal Caribbean Cruises, Ltd.*, 515 F. Supp. 2d 1278, 1283 (S.D. Fla. 2007) (same).

### F. Plaintiff's Loss of Consortium Claim is Foreclosed as a Matter of Law and Should be Dismissed or Stricken

The Ninth Circuit has held that "loss of consortium and loss of society

---

[2] Plaintiffs have previously acknowledged that their nuisance claim is insufficient. Their opposition to Princess's motion to dismiss the First Amended Complaint, which raised the exact same nuisance claim (Dkt. 34 ¶¶ 52-57), did "not contest the grounds presented for dismissal of their nuisance claim and admit[te]d that dismissal of that claim is appropriate for the reasons spelled out in the motion to dismiss" (Dkt. 40 at 8 n.1).

damages are not available … under general maritime law" for "the dependents of a passenger injured in an accident at sea." *Chan v. Soc'y Expeditions, Inc.,* 39 F.3d 1398, 1408 (9th Cir. 1994) (affirming dismissal of claims). Plaintiff Aurora Kirby's claim for "loss of consortium" based on her husband's alleged contraction of the illness (SAC ¶ 71) is thus foreclosed as a matter of law and should be dismissed under Rule 12(b)(6) or stricken under Rule 12(f).

### G. Plaintiffs' Claims for Punitive Damages are Foreclosed as a Matter of Law and Should be Dismissed or Stricken

Finally, even if Plaintiffs' claims could go forward on the merits, Plaintiffs' claims for punitive damages are foreclosed as a matter of law and should therefore be dismissed under Rule 12(b)(6) or stricken under Rule 12(f).

The Supreme Court has recently clarified several important limitations on the availability of punitive damages in maritime cases, all of which make clear that punitive damages are unavailable in cases alleging only emotional distress—at least where that distress is not intentionally inflicted. In *The Dutra Group v. Batterton*, 139 S. Ct. 2275 (2019), the Supreme Court set forth a framework for deciding when punitive damages are available under general maritime law, and then applied that framework to hold that punitive damages are unavailable in claims for unseaworthiness. First, where there is no federal statute authorizing punitive damages, courts must determine "whether punitive damages have traditionally been awarded" in the category of case at issue. *Id.* at 2283. If they are not, then the imposition of punitive damages is precluded. *See Dunn v. Hatch*, 792 F. App'x 449, 451 (9th Cir. 2019) (*Batterton* "held that punitive damages cannot be recovered on claims in admiralty where there is no historical basis for allowing such damages"). If the imposition of punitive damages would create "bizarre disparities in the law," that further counsels against their availability. *Batterton*, 139 S. Ct. at 2287. And in determining whether to permit punitive damages, courts must proceed "cautiously in light of Congress's persistent pursuit of uniformity in the exercise of admiralty

13

jurisdiction." *Id.* at 2278 (*Miles v. Apex Marine Corp.*, 498 U.S. 19, 27 (1986)).

Under this framework, Plaintiffs cannot recover punitive damages. While the Ninth Circuit has occasionally upheld the imposition of punitive damages for certain claims under general maritime law, *see Churchill v. F/V Fjord*, 892 F.2d 763, 772 (9th Cir. 1998), Defendant is aware of no binding precedent supporting the imposition of punitive damages for negligently (even grossly negligently) inflicted emotional distress. To the contrary, any "tradition" of punitive damages in maritime cases is limited to cases where the defendant's conduct is truly "outrageous"—cases of "enormity or deplorable behavior." *Dunn*, 792 F. App'x at 452. And some courts have held expressly that punitive damages are unavailable to "personal injury claimants … except in exceptional circumstances such as willful failure to furnish maintenance and cure to a seaman (who are viewed as special wards of the court requiring additional protection), intentional denial of a vessel owner to furnish a seaworthy vessel to a seaman, and in those very rare situations of intentional wrongdoing." *In re Amtrak Sunset Ltd. Train Crash in Bayou Canot, Ala. on Sept. 22, 1993*, 121 F.3d 1421, 1429 (11th Cir. 1997). Recent decisions from the Eleventh Circuit, home to much cruise ship litigation, confirm that punitive damages are not available in passenger personal injury cases. *Eslinger v. Celebrity Cruises, Inc.,* 772 Fed. Appx. 872, 872 (11th Cir. 2019); *Simmons v Royal Caribbean Cruises, Ltd.,* 423 F. Supp.3d. 1350 (S.D. Fla 2019) (there is no historical justification for punitive damages in cruise passenger negligence cases). As in *Batterton*, the absence of case law supporting the availability of punitive damages in suits for negligently inflicted emotional distress "is practically dispositive." 139 S. Ct. at 2284.

But even if the history of punitive damages under maritime law were more equivocal (which it is not), the imposition of punitive damages here would create the same "bizarre disparit[y] in the law" that demanded foreclosure of punitive damages in *Batterton*. The Court there noted that, if punitives were permitted for unseaworthiness claims, "a mariner could make a claim for punitive damages if he

was *injured* onboard a ship, but," because of the Court's prior decision in *Miles*, "his estate would lose the right to seek punitive damages if he *died* from his injuries." 139 S. Ct. at 2287 (emphasis added). The same disjoint would occur here, as the Death on the High Seas Act (DOHSA) expressly forbids the imposition of punitive damages for deaths caused by incidents more than three miles offshore.  *See* 46 U.S.C. § 30303 (allowing damages only for "pecuniary loss"); *Batterton*, 139 S. Ct. at 2285 n.8.  Under Plaintiffs' theory, passengers alleging exposure to a disease on the high seas can freely recover punitive damages if they never contracted the disease, and yet, if those same passengers died from the disease, DOHSA would bar their claim for punitive damages. To avoid that arbitrary differential treatment, and to properly "pursue the policy expressed in congressional enactments" like DOHSA, punitive damages must be foreclosed. *Id.* at 2281.

The policies that drive strict application of the zone of danger test in emotional distress cases, *see supra* section III.B, further cement that punitive damages cannot be available in cases involving emotional distress based on alleged disease exposure. To the extent that liability *alone* did not create the "infinite and unpredictable liability," *Ayers*, 538 U.S. at 146, the "stark unpredictability of punitive awards," *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 499 (2008), would make that threat an unavoidable reality. The mere suggestion that a plaintiff might be entitled to recover punitive damages will only further the flood of litigation that the Supreme Court has so clearly warned against in fear of disease cases.  The open-ended threat of punitive damages would hobble "maritime commerce"—the "fundamental interest served by federal maritime jurisdiction." *Batterton*, 139 S. Ct. at 2287.[3]

/ / /

---

[3] Even if punitive damages were available, the Supreme Court has held that "under maritime law, the maximum ratio of punitive damages to compensatory damages is 1-1." *Exxon Valdez v. Exxon Mobil*, 568 F.3d 1077, 1079 (9th Cir. 2009). If this Court does not dismiss or strike the request for punitive damages altogether, the Court should limit Plaintiffs' damages accordingly.

15

## IV. CONCLUSION

For the foregoing reasons, Defendant requests that the Court grant its Motion and dismiss this case with prejudice.

DATED: August 18, 2020

MALTZMAN & PARTNERS

By: *s/ Jeffrey B. Maltzman*
Jeffrey B. Maltzman
Rafaela P. Castells
Edgar R. Nield
Gabrielle De Santis Nield

ARNOLD & PORTER
KAYE SCHOLER LLP

Jonathan W. Hughes (SBN: 186829)
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111
Telephone: (415) 471-3100
Facsimile: (415) 471-3400
jonathan.hughes@arnoldporter.com

David J. Weiner (SBN: 219753)
601 Massachusetts Avenue, N.W.
Washington, DC 20003
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
david.weiner@arnoldporter.com

*Attorneys for Defendant*
*Princess Cruise Lines Ltd.*

MALTZMAN & PARTNERS
681 Encinitas Boulevard, Suite 315
Encinitas, CA 92024
Telephone: (760) 942-9880 Fax: (760) 942-9882

16

DEFENDANT'S MOTION TO DISMISS 2:20-CV-03788-RGK-SK